[No. B036897. Second Dist., Div. Two. Nov. 1, 1988.]

AUTOLAND, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
HELGA M. MAYERS et al., Real Parties in Interest.

**COUNSEL**

Grace & Neumeyer, Philip R. Cosgrove and Gary A. Bixler for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

No appearance for Real Parties in Interest.

## OPINION

**COMPTON, Acting P. J.**—This mandate proceeding presents the novel question whether a court-appointed discovery referee may be disqualified by peremptory challenge pursuant to Code of Civil Procedure section 170.6.

In connection with a discovery motion, the trial court appointed a retired judge of the superior court as referee to preside over all discovery matters in the action, pursuant to Code of Civil Procedure section 639, subdivision (e). Six days after being notified of the appointment, petitioner filed its peremptory challenge against the referee. The trial court struck the challenge, ruling that the peremptory challenge afforded by section 170.6 does not pertain to discovery referees. This petition followed.

Section 170.6 provides, in pertinent part, that "No judge, court commissioner, or referee of any superior, municipal or justice court of the State of California shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact" after the timely filing of a peremptory challenge in proper form.

Respondent does not argue that discovery disputes do not involve contested issues of law or fact. Rather, it contends: (1) a discovery referee does not "hear" a discovery motion because he does not rule on it, but rather merely submits a recommended ruling to the appointing court; (2) the seven grounds for disqualification of a referee set forth in section 641 constitute the exclusive bases for disqualifying a referee; and (3) the Legislature, in adding the word "referee" to the language of section 170.6, intended to authorize challenges only to referees performing subordinate judicial duties assigned by the presiding judge of the juvenile court.

■ The phrase "hear any matter" cannot fairly be interpreted to exclude the function of a referee who hears but does not decide a discovery motion. In addition, where (as in this case) the referee's assignment is to preside over all discovery matters, the referee may be called upon to preside at depositions, during the course of which he will in fact make rulings on whether witnesses must answer particular questions over a party's objection.

■ There is no reason, moreover, to view the disqualification grounds enumerated in section 641 as displacing the section 170.6 procedure. Though specific statutory provisions displace inconsistent general ones, these two provisions are not inconsistent; the courts can effectuate both without ignoring or violating either. Indeed, it is not even certain which of

the two statutes should be regarded as more specific in this situation— section 641 deals specifically with referees, but section 170.6 deals specifically with peremptory challenges.

■ Respondent's third contention has considerably more substance. Chapter 1071 of the 1976 statutes comprised 40 sections, of which all but 2—sections 1 and 10—dealt only with the Juvenile Court Law. Section 1 added the word "referee" in 12 of the 13 places section 170.6 previously had designated only "judge or court commissioner."[1] Section 10 added the following provision to the Juvenile Court Law (now found at Welf. & Inst. Code, § 247.5): "The provisions of Sections 170 and 170.6 of the Code of Civil Procedure shall apply to a referee, provided, that the presiding judge of the juvenile court shall if the motion is granted reassign the matter to another referee or to a judge of the juvenile court." Thus it is possible that the Legislature, in bringing referees within the compass of section 170.6, was thinking only of juvenile court referees.[2] Indeed, the constitutional requirement that a statute embrace but one subject (Cal. Const., art. IV, § 9) supports this view.

Nonetheless, the terminology of the statute, which mentions referees without any words of limitation, is too plain to be undermined by circumstantial evidence of a narrower legislative intention. ■ An unambiguous statute cannot be allowed to carry a hidden meaning discernible only upon examination of the entire chaptered session law by which the statute was enacted. Even if the Legislature's omission of words restricting the statute to juvenile court referees were inadvertent, the statutory language must control, unless an absurd result would follow. (See, e.g., *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].)

■ Here, the result is not absurd. If a litigant can exercise his one peremptory challenge to disqualify a particular judge or court commissioner from hearing a discovery motion, there is no compelling reason why he should be unable to disqualify a particular referee from hearing the motion.

The challenge must not, however, be used as a tool for delay. ■ The long list of timing rules in subdivision (2) of section 170.6 appears designed

---

[1] We attribute no significance to the Legislature's failure to add "referee" in a thirteenth place, which appears toward the end of subdivision (1).

[2] In addition, sections 1 and 10 of the 1976 enactment may have been intended to address the Supreme Court's recent pronouncement that a section 170.6 challenge cannot be used against a juvenile court referee because section 170.6 mentions only judges and court commissioners. (*In re Edgar M.* (1975) 14 Cal.3d 727, 732, fn.5 [122 Cal.Rptr. 574, 537 P.2d 406].)

to require that the litigant present his challenge as soon as possible after he knows with some reasonable certainty who will hear the motion. (E.g., *Thomas Realty Co.* v. *Superior Court* (1988) 199 Cal.App.3d 91, 96 [244 Cal.Rptr. 733].) A challenge to a discovery referee should not be delayed until five days before the first hearing scheduled by the appointed referee; it should be filed promptly when the trial court makes the objectionable appointment. If the appointment is announced in the presence of counsel, the challenge should be exercised immediately.[3]

We confess to entertaining substantial reservations about the legality of section 170.6 itself. Its predecessor, enacted in 1937, was promptly and unanimously ruled an unwarranted and unlawful interference with the constitutional powers and duties of the trial courts. (*Austin* v. *Lambert* (1938) 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849].) The Supreme Court recognized that the peremptory challenge subjected "the exercise of judicial power, duty and responsibility . . . to the whim and caprice of a lawyer or litigant." (*Id.* at p. 76.) As the court aptly remarked, "to put in the hands of a litigant uncontrolled power to dislodge without reason or for an undisclosed reason, an admittedly qualified judge from the trial of a case in which forsooth the only real objection to him might be that he would be fair and impartial in the trial of the case would be to characterize the statute not as a regulation but as a concealed weapon to be used to the manifest detriment of the proper conduct of the judicial department." (*Id.* at p. 79.)

After a hiatus of 20 years without any provision for a peremptory challenge—during which, so far as we know, our legal system did not perish—the Legislature resuscitated the peremptory challenge in its present form, adopting the requirement of a boilerplate affidavit, and the Supreme Court upheld the new statute in *Johnson* v. *Superior Court* (1958) 50 Cal.2d 693 [329 P.2d 5] and again in *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182 [137 Cal.Rptr. 460, 561 P.2d 1148].

These decisions, we believe, should be reexamined by the Supreme Court to determine whether the "affidavit" form prescribed by section 170.6, subdivision (5), which requires the litigant or attorney to insert no factual

---

[3] Subdivision (6) authorizes an oral presentation of the challenge.

Subdivision (2) specifies that "In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be." It would appear that the nearest analogous procedure is the assignment of a judge for all purposes. (See *Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407, 416-421 [241 Cal.Rptr. 818].)

In Trial Court Delay Reduction Act pilot project cases like the instant one, the court's interest in preventing delay is decreed by statute. (Gov. Code, § 68608.) The superior court may wish to add to its pilot project rules a deadline for a section 170.6 challenge to a discovery referee. (See Gov. Code, § 68612; *Swenson* v. *Superior Court* (1988) 202 Cal.App.3d 348 [248 Cal.Rptr. 340].)

averments whatsoever, is nothing more nor less than the old unconstitutional statute recycled with an empty pretension of a sworn statement. *Solberg's* characterization of the requirement that the party or his attorney "show good faith by declaring under oath that the judge is prejudiced" as a "statutory safeguard . . . designed to minimize abuses" (19 Cal.3d at p. 197) is unsatisfying. At least in the Superior Court of Los Angeles County, it is universally understood that the challenge is used mostly for purposes unrelated to bias or prejudice of the judge.

At the very least, the person making the challenge should be required to state the facts and the reasons for his belief the judge is biased or prejudiced. (See *Fraijo* v. *Superior Court* (1973) 34 Cal.App.3d 222, 226-231 [109 Cal.Rptr. 909] (conc. and dis. opn. of Compton, J.).) Under the current state of affairs, a duly qualified judge can be removed from a case for reasons "merely known in the secret recesses of the mind of the litigant." (*Austin* v. *Lambert, supra,* 11 Cal.2d at p. 80.)

Despite our belief that reexamination of *Solberg* is warranted, and notwithstanding our desire for the salutary effects that could be achieved by corrective amendments, we of course follow the law as enacted by the Legislature and upheld by the Supreme Court.

The alternative writ is discharged. Let a peremptory writ of mandate issue, directing respondent to vacate its order of July 27, 1988, striking petitioner's peremptory challenge against the discovery referee, and to conduct further proceedings consistent with the views expressed herein.

Fukuto, J., concurred.

**GATES, J.**—I fully concur in my colleagues' disposition with regard to the instant proceeding and, in the main, with their observations concerning the inappropriate manner in which Code of Civil Procedure section 170.6 is so frequently utilized. I further agree it would be well for our Legislature to consider corrective amendments designed to curtail these abuses.

I write here only to note that, despite its shortcomings, in my experience this section has served a salutary purpose in eliminating the necessity for a counsel or his client to detail the bases for their views regarding a given jurist and their resultant belief, accurate or inaccurate, that he is prejudiced against them personally or against their cause generally.

Strive as we will, I wonder if even the noblest mortal remains wholly unaffected by *ad hominem* assaults upon his or her character. On occasion, principles have been known to become so hopelessly intertwined with

personalities that an on-the-record public airing of private grievances could only produce wounds sufficiently grievous as to cause permanent scarring. Perhaps this possibility is greatest in the smaller counties, or in the branch courts of the more populous areas, but I doubt that human nature is fail-safe even in the Central District of the Los Angeles Superior Court.