Filed 6/11/26  Marriage of A.R. and R.R. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of A.R. and R.R. | 2d Civ. No. B340171<br>(Super. Ct. No. D388326)<br>(Ventura County) |
| A.R.,<br><br>    Appellant,<br><br>v.<br><br>R.S.,<br><br>    Respondent. | |

A.R. appeals from a judgment entered against him in favor of his ex-wife, R.R., on her request for a domestic violence restraining order (DVRO).  The trial court granted R.R.'s request and issued a three-year DVRO.  A.R. raises due process violations and contends the court erred when it referred discovery disputes to a referee and imposed issue sanctions.  We affirm.

## FACTS AND PROCEDURAL HISTORY

### *R.R.'s DVRO request*

A.R. and R.R. married in 2012 and had three children.  A.R. petitioned for dissolution and their marriage dissolved in 2019. The trial court granted full physical and legal custody of the children to R.R., and granted A.R. overnight visitation.  The court found that A.R. committed verbal and physical domestic abuse against R.R., and ordered him to complete a 52-week batterer's treatment course.

After the dissolution and judgment, A.R. and R.R. spent time together in 2019 and 2020, including during R.R.'s custodial time.  Around July 2020, R.R. discovered that A.R. had been video and audio recording her without her consent.  R.R.'s attorney requested copies of all such recordings, but did not receive them.  In March 2021, R.R.'s attorney requested that A.R. preserve all electronically stored information (ESI), "including without limitation all . . . recordings of [R.R.] from last year," and again requested production of the ESI.

In April 2021, R.R. filed the underlying DVRO.  R.R. contended A.R. uploaded the recordings to his YouTube account and sent links to third parties without her consent.  The trial court granted R.R.'s request for a temporary restraining order and set a hearing on the DVRO request.  Trial on the DVRO was continued due to discovery disputes.

### *Discovery disputes*

In February 2022, R.R. noticed A.R.'s deposition with a request for production of documents.  A.R. did not object.  At his deposition, A.R. admitted to the existence of storage devices

containing ESI, but he did not produce them. A.R. repeatedly stated that he would not produce the requested devices and ESI.

In April 2022, the trial court granted R.R.'s request that A.R. produce the ESI and numerous electronic and storage devices to court-appointed expert John Troxel.[1] The court ordered the parties to share Troxel's costs and denied without prejudice R.R.'s request for a discovery referee.

After A.R. did not produce the court-ordered discovery to Troxel, R.R. renewed her request for a discovery referee. The trial court granted the request, and appointed Leon Bennett as the discovery referee[2] to "facilitate A.R.'s production of ESI," "supervise" and "hear and determine all discovery motions and disputes," and "report findings and make recommendations" on such motions and disputes. The court ordered A.R. to pay the referee's fees.

A.R. still did not produce the devices and ESI, and R.R. sought issue sanctions against A.R. The referee held a hearing and issued findings and recommendations. The referee found that R.R. had spent over two years attempting to obtain A.R.'s ESI, to no avail. The referee also found that A.R. engaged in spoliation of evidence and that his conduct constituted a willful refusal to respond to discovery and comply with the trial court's discovery orders. The referee recommended issue sanctions against A.R.

---

[1] The trial court previously appointed Troxel to facilitate and supervise the production of ESI belonging to third party R.O., A.R.'s girlfriend.

[2] The trial court previously appointed Bennett to supervise R.O.'s discovery obligations, including completing her deposition and producing her ESI.

After receiving A.R.'s objections to the referee's recommendations, the trial court adopted the recommendations and imposed issue sanctions. The court ordered that A.R. would be precluded from arguing and presenting evidence that "he did not clandestinely conduct post-Judgment electronic surveillance of R.R. and their children," "did not publish recordings that were the fruit of that illegal surveillance, and . . . did not abuse the litigation process and further commit [domestic violence] through it."

*Trial on R.R.'s petition for a DVRO*

Trial on the DVRO spanned over seven days and numerous witnesses testified, including A.R. and R.R. The court issued a DVRO because it found R.R. proved by a preponderance of the evidence that A.R. had disturbed her peace, including through coercive control, by sharing links to videos of R.R. to others without her permission. Among other things, the DVRO prohibits A.R. from recording R.R. via video or audio means.

DISCUSSION

A.R. contends (1) the sanctions order and subsequent hearing on the DVRO petition violated his substantive and procedural due process rights; (2) the trial court violated Code of Civil Procedure[3] section 639 by appointing a discovery referee without making mandatory findings; and (3) the court abused its discretion by failing to independently review the referee's recommendations because A.R. substantially complied with discovery. We conclude there is no prejudicial error.

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

4

*Procedural and substantive due process*

Under the Domestic Violence Protection Act, a court is authorized to issue a protective order enjoining a party from engaging in specific acts of harassment or abuse against a former spouse or cohabitant. (Fam. Code, §§ 6211, subds. (a) & (b), 6218.) The person sought to be enjoined must receive notice and a " 'meaningful' " hearing permitting them to state their position, refute the allegations, and be afforded the opportunity to examine evidence and cross-examine witnesses. (*In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 934–935.) We review due process claims de novo. (*Cardona v. Soto* (2024) 105 Cal.App.5th 141, 150.)

There is no due process violation here. Regarding the imposition of sanctions, A.R. does not dispute that he had notice of the sanctions request and an opportunity to oppose it. A.R.'s attorney appeared before the referee at the sanctions hearing and argued A.R.'s position. The referee issued a detailed recommendation to the trial court, highlighting his review of A.R.'s opposition, and A.R.'s lack of a sworn statement opposing the request. The trial court later outlined its review of the record at the hearing on the referee's recommendation, including A.R.'s objections.

Because A.R. requested the sanctions request be heard by the referee rather than the trial court and participated in that process, he cannot now claim that the reference to the referee violated his due process rights. (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 121.)

We also reject A.R.'s contention that the issue sanctions violated due process because they were punitive in nature based on his inability to produce items he no longer possessed or had

5

already produced. A.R. conceded that he discarded certain ESI devices, and would not produce others, even after receiving a preservation request from R.R.'s counsel. To the extent A.R. requests that we go inspect each device and investigate whether they were produced, we decline to do so. Troxel conducted this analysis and the referee found that many ESI and electronic and storage devices had not been produced.

Nor was there a due process violation regarding the trial on R.R.'s DVRO. A.R. appeared and testified at trial, and his counsel cross-examined several witnesses. A.R. testified that R.R. never consented to being recorded and told him to stop recording her, but that he recorded R.R. "for [his] protection" from "[f]alse allegations." A.R. also admitted that he recorded himself and R.R. engaging in sexual relations without advising her of the recording. He also testified that immediately after having sex, R.R. brought up R.O., A.R.'s ex-girlfriend, and that A.R. uploaded a video of their subsequent argument to YouTube to protect himself "[f]rom false accusations . . . that I'm the one committing domestic violence." A.R. sent links of this video to others, including R.O. The record supports that A.R. was afforded the full opportunity to explain his version of events and to refute R.R.'s allegations of domestic violence.

*Appointing a discovery referee*

Ordinarily, the trial court resolves discovery disputes at no cost to the parties. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 620.) But when the trial court deems it necessary, it may appoint a referee to "hear and determine any and all discovery motions and disputes . . . and to report findings and make a recommendation thereon." (§ 639, subds. (a)(5), (d).) Courts have broad discretion to impose a discovery referee on nonconsenting parties to resolve

6

" 'complicated, time-consuming discovery disputes,' " as the referee's appointment may "induce parties to take a more reasonable approach to discovery to keep costs from mounting." (*Taggares v. Superior Court* (1998) 62 Cal.App.4th 94, 104.) Appointment of a discovery referee is reviewed for abuse of discretion. (*Reed v. Reed* (1953) 118 Cal.App.2d 399, 400.)

Discovery referees charge their own fees. After determining ability to pay, trial courts may order the parties to pay the fees "in any manner determined by the court to be fair and reasonable, including an apportionment of the fees among the parties." (§ 645.1, subd. (b).) The trial court, not the referee, must determine what is " 'fair and reasonable.' " (*Taggares*, *supra*, 62 Cal.App.4th at p. 105.) Absent a contrary showing, we presume the trial court weighed all appropriate factors in exercising its discretion. (*DeBlase v. Superior Court* (1996) 41 Cal.App.4th 1279, 1286.)

Here, the trial court acted within its discretion when it appointed a discovery referee to supervise A.R.'s failure to produce the court-ordered ESI and adjudicate related motions and disputes. The trial court denied R.R.'s initial request for a referee to assist with A.R.'s failure to produce ESI, but did appoint an expert to review the ESI with costs shared by the parties. When A.R. failed to produce the ESI, R.R. renewed her request for a referee. By this point, it had been more than a year since R.R. served A.R. with an ESI preservation letter, more than three months since R.R. served A.R. with discovery requesting his ESI, and nearly three months after A.R. testified at his deposition that he would not produce the ESI. Given A.R.'s refusal to produce the court-ordered ESI to R.R. and Troxel, appointing a discovery referee was not an abuse of discretion.

7

A.R. nevertheless contends the trial court committed reversible error because it appointed the referee without making mandatory findings regarding his "economic inability to pay a pro rata share of the referee's fee," as required under section 639, subdivision (d)(6)(A). Because A.R. did not raise this issue below, he may not raise it for the first time on appeal. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 464.) Prior to the hearing on R.R.'s request for a discovery referee, A.R. did not raise this issue in his opposition. At the hearing, A.R.—self-represented at the time—stated the proposed order "does not comply with [Code of Civil Procedure] 639 and 640 because I am unable to pay." But A.R. did not submit a sworn declaration or other documentation demonstrating an inability to pay the referee's fees at the time. (*McDonald v. Superior Court* (1994) 22 Cal.App.4th 364, 366 [plaintiff claiming inability to pay referee fees submitted sworn declaration stating she was homeless, had no income, could not pay rent, and was forced to stay at friends' houses].)

A.R. did not seek the referee's disqualification, or file written objections to the reference. (§ 170.6; *Pedus Services, Inc. v. Superior Court* (1999) 72 Cal.App.4th 140, 146; §§ 641, 642.) Instead, he continued to litigate the case and did not file a petition for writ of mandate. (*Glickman v. Krolikowski* (2025) 109 Cal.App.5th 527, 533 ["Immediate challenges to discovery referee references and orders pertaining to the payment of such referees should be made by writ petition"]; see also *Solorzano v. Superior Court* (1993) 18 Cal.App.4th 603, 607 [plaintiffs proceeding in forma pauperis sought writ of mandate to vacate trial court's order that they share discovery referee costs]; *McDonald v. Superior Court, supra*, 22 Cal.App.4th at pp. 366–367 [plaintiff ordered to pay referee costs sought writ of mandate

vacating trial court order].)  A.R. later obtained new counsel and participated in the trial on R.R.'s DVRO petition.

Unlike the plaintiffs in *Solorzano* and *McDonald*, A.R. did not promptly object or take other action regarding the referee's appointment.  Thus, A.R. has forfeited this argument.  (*In re A.K.* (2017) 12 Cal.App.5th 492, 501; *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264–265.)

Because he was proceeding in forma pauperis with a fee waiver in place, A.R. maintains his forfeiture is excused.  A.R. contends he should have been "deemed by the court to have an economic inability to pay the referee's fees" (§ 639, subd. (d)(6)(B)), and should not have been ordered to pay those fees. (*Solorzano*, *supra*, 18 Cal.App.4th at pp. 614–615 [indigent litigants cannot pay court-ordered fees by definition and thus cannot be made to pay the fees of a privately compensated discovery referee].)  We conclude reversal is not warranted.

A.R. has not shown he was prejudiced by the order that he pay the referee's fees.  The referee's recommendation did not even mention A.R.'s failure to pay the referee's fees, and only raised A.R.'s failure to pay earlier monetary sanctions in explaining why issue sanctions were recommended.  And when A.R. did not pay the referee's fees, the trial court ordered R.R. to advance the fees for the referee and Troxel so they could be paid and complete their work.  Thus, A.R. was not prejudiced by the order that he pay the referee's fees, including his subsequent failure to pay those fees.  No miscarriage of justice on this basis has been shown.  (Cal. Const., art. VI, § 13.)

A.R. also contends the discovery referee failed to file a certification regarding disclosures of potential conflicts of interest.  (Cal. Rules of Court, rule 3.924.)  But A.R. did not object

9

until the start of trial, nearly two years after the referee's appointment.  Thus, this contention is waived.  (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501.)

*Adoption of discovery referee's recommendations*

A discovery referee's findings and recommendations to the trial court "are advisory only, and do not become binding unless adopted by the court."  (*Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1522.)  The trial court must independently consider them, including any objections, before adoption.  (*Ibid.*; § 644, subd. (b).)  If the trial court adopts the recommendations, they are binding on the parties.  (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 176.)  We review their adoption for abuse of discretion.  (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 589.)  And we review the entire record in the light most favorable to the court's ruling, drawing all reasonable inferences in its support.  (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1084.)

Here, it was not an abuse of discretion for the trial court to adopt the referee's recommendation that issue sanctions be imposed.  The court noted the recommendations were "well-founded" and "extremely thorough."  It evidenced its familiarity with the findings and underlying facts.  For example, regarding A.R.'s admitted use of a burner phone, the court concluded that its use was consistent with "the intent of trying to conceal its relationship to the user and to ultimately conceal its contents from discovery."  The court concluded issue sanctions were "the most appropriate sanction" before "exercis[ing] its independent judgment."

A.R. contends the court erred in adopting the recommendations because it purportedly offered "no meaningful

10

legal or factual analysis." He also contends the court did not discuss the "legal standards governing discovery sanctions" before adopting the recommendations. But no such discussion is required. Before adopting a referee's recommendations, the trial court is required to independently consider the findings and objections from the parties. (*Jovine, supra,* 64 Cal.App.4th at p. 1522.) The trial court did so here.

*Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, which A.R. relies on, is inapposite. In *Aetna*, the trial court erred by treating a referee's recommendations as "binding and determinative" and entering judgment with no rehearing procedure and no evidence that the trial court independently considered the referee's recommendations. (*Id.* at p. 436.) In contrast here, the court held a hearing on the referee's recommendations, noted the documents it reviewed, and explained its reasons for adopting the recommendations.

A.R. also contends the referee's recommendations go "far beyond" (italics omitted) what R.R. requested because she requested that A.R. be "precluded from" making certain arguments, but the referee recommended that A.R. also be precluded "from presenting evidence." This is a distinction without a difference because the prohibition against making certain arguments necessarily precludes marshalling evidence to support them. Moreover, the referee was tasked with making recommendations on discovery motions. And as part of his recommendations, the referee recommended this issue sanction. This was within the referee's discretion, as was the trial court's adoption of the issue sanction.

We also reject A.R.'s contention that the trial court erred in ordering issue sanctions. We review this claim for abuse of

11

discretion.  (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878.)  There must be a willful failure to comply with a court order before nonmonetary sanctions are imposed.  (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1327.)  The burden of demonstrating an abuse of discretion rests on A.R.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)

A.R. has not met that burden here.  The court, after adopting the discovery referee's recommendation, imposed issue sanctions more than three years after R.R. originally requested A.R.'s ESI.  A.R. did not produce his ESI despite being ordered to do so.  At his deposition A.R. unequivocally testified he would not produce the ESI.  He also admitted that certain electronic devices presumably containing ESI were "gone" and no longer accessible.  Because A.R. failed to submit a sworn declaration in opposition to the issue sanctions request, he did not rebut R.R.'s allegations.  Given A.R.'s failure to produce his electronic devices and ESI and violation of the court's orders, it was within the court's discretion to prevent A.R. from making arguments at trial regarding what he did or did not do with those devices.

We also reject A.R.'s contention that the issue sanctions operated as a de facto terminating sanction.  Despite the recordings, A.R. was permitted to argue a justification for recording R.R. and to argue that her peace of mind was not disturbed.  The trial court correctly noted it was R.R., not A.R., who carried the burden to establish her entitlement to a DVRO.

A.R.'s contention that the referee's findings were refuted by undisputed evidence is also unavailing.  Substantial evidence supports the referee's findings, and we do not reweigh the evidence or make credibility determinations.  (*Weinman v. Gray*

12

(1962) 206 Cal.App.2d 817, 819.) A.R. could have rebutted R.R.'s contention that he did not substantially comply with his discovery obligations. But as noted, A.R. did not submit any evidence or his sworn statement in opposition. Instead, his attorney submitted a declaration that the referee found insufficient. The referee considered A.R.'s attorney's argument before ultimately recommending that issue sanctions be granted because it found A.R. engaged in spoliation of evidence and willfully refused to respond to discovery and comply with the trial court's orders. We defer to the referee's factual findings. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.)

Finally, A.R. contends the referee failed to consider the safe harbor exception to R.R.'s ESI requests. Under section 2023.030, subdivision (f)(1), no party will be sanctioned for failing to provide ESI "that has been lost, damaged, altered, or overwritten as a result of the routine, good faith operation of an electronic information system." A.R. contends that his inability to produce ESI resulted from such routine operations, not misconduct. We disagree.

Because A.R. did not raise this exception in the trial court, this contention is forfeited. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486.) Nor does the record support that A.R.'s failure to produce his ESI arose from "the routine, good faith operation of an electronic information system." A.R. testified he would not produce his devices because he believed he should not have to, not because of routine device maintenance. There was insufficient evidence of good faith to support a safe harbor exception.

13

## DISPOSITION

The judgment is affirmed.  Respondent shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

14

JoAnn Johnson, Judge

Superior Court County of Ventura

_____

Masson Fatini, Richard E. Masson and Susan M. Fatini-Masson for Appellant.

Complex Appellate Litigation Group, Claudia Ribet, Jennifer Teaford; Glucksman Law Group and William J. Glucksman for Respondent.